FRANKS, Collector, v. ROBARDS TOBACCO CO.

(Circuit Court of Appeals, Sixth Circuit. December 16, 1901.)

No. 965.

INTERNAL REVENUE—WAR REVENUE ACT—ADDITIONAL TAX ON MANUFACTURED TOBACCO.

Under section 3 of the war revenue act of 1898, which increased the tax on manufactured tobacco from 6 to 12 cents per pound, but which further provided that all articles enumerated in the section, "manufactured, imported and removed from factory or custom house" before the passage of the act, bearing tax stamps canceled subsequent to April 14, 1898, and which articles were at the time of the passage of the act "held and intended for sale by any person," should pay a tax equal to one-half the difference between the tax already paid and that levied on the article by such act, a manufacturer of tobacco, who had lawfully paid the tax thereon after April 14th, and held the same for sale in his factory at the time of the passage of the act, could not be required to pay an additional tax of 6 cents per pound thereon, instead of 3 cents, merely because the same had not been physically "removed" from his factory.

In Error to the Circuit Court of the United States for the District of Kentucky.

For opinion below, see 103 Fed. 276.

W. H. Thatcher, for plaintiff in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

LURTON, Circuit Judge. This is an action to recover internal revenue taxes assessed upon manufactured tobacco in the hands of the defendants in error, and paid under protest to the plaintiff in error, who was the collector of internal revenue for the Second district of Kentucky. The plaintiffs below, who were small manufacturers of tobacco, had on hand and stored in their factory on the day succeeding the date of the passage of the war revenue act of June 13, 1898, 18,935 pounds of manufactured tobacco, which subsequent to April 14, 1898, and prior to June 13, 1898, had been duly stamped and tax paid, and stamps canceled as required by law, and which had been duly reported in form 62 as tax paid and withdrawn for sale and consumption. The rate of tax collectible on said tobacco at the date of this payment was 6 cents per pound. Solely upon the ground that this tobacco had not been actually removed from the factory when the act of June 13, 1898, went into

force, the commissioner of internal revenue directed that an additional tax of 6 cents per pound be assessed and collected.

By the first paragraph of section 3 of the act of June 13, 1898, the rate of the tax "upon all tobacco manufactured and sold, or removed for sale," was increased to 12 cents per pound. By the second paragraph of the same section it is provided, that there shall "also be assessed and collected * * * upon all articles enumerated in this section which are manufactured, imported and removed from factory or custom house before the passage of this act bearing taxed stamps affixed to such articles for the payment of the taxes thereon and cancelled subsequent to April 14, 1898, and which articles were at the time of the passage of this act held and intended for sale by any person, a tax equal to one-half the difference between the tax already paid on such articles at the time of removal from the factory or custom house and the tax levied in this act upon such article." This last paragraph applies precisely to the tobacco upon which the Robards Tobacco Company has been compelled to pay an additional tax of 6 cents per pound, except in the single fact that there had been on June 13th no actual physical removal of the tax-paid tobacco from the factory of the company. For the government it is admitted that any actual removal from the factory premises, even across a single partition, would have been a "removal" under the law, and that the tobacco would then have been subject only to one-half the tax which was collected. Is there any sufficient reason for construing this provision of the act of 1898 as imposing upon a manufacturer who on June 13, 1898, held tax-paid tobacco in his factory, for sale or consumption, double the additional tax imposed by the same law upon tax-paid tobacco held by a dealer? The interpretation insisted upon does not turn upon the ownership of the tobacco, or the owner's occupation. The second paragraph of the third section provides that tax-paid tobacco shall be subject to the lighter burden imposed by that paragraph, "if held and intended for sale by any person." Under the construction of the law as shown by practice of the department, a manufacturer might keep his tobacco after manufacture as long as he chose without paying the tax. He was required to pay the tax only when he desired to sell it, or to remove it for sale or consumption. By section 3355, Rev. St., manufacturers are required to give bond conditional, among other things, that they "will stamp in accordance with law all tobacco and snuff manufactured by him before he removes any part thereof from the place of manufacture." And by section 3372 penalties are imposed for removing manufactured tobacco or selling same without having the proper stamps affixed, etc. Thus it appears that, if a manufacturer desired to put his product into a salable or removable or consumable condition, it was necessary for him to affix and cancel the proper stamps; for his tobacco is not lawfully removable or salable until this is done. Rev. St. §§ 3363, 3355, 3372. From these provisions of the law it is very plain that, though no sale or removal of manufactured tobacco can be lawfully made without the prepayment of the tax thereon, it is entirely lawful, for the manufacturer

112 F.—50

to pay such taxes at any time before a sale or removal, and entirely lawful for the collector to receive the tax by the sale of the stamps when applied for. In this respect this distinguishes the case under consideration from Lilenthal's Tobacco v. U. S., 97 U. S. 237, 24 L. Ed. 901. Under the law as it then stood, the tax on manufactured tobacco only accrued when it was removed or sold for consumption. Until such removal or sale the manufacturer had no right to return it for taxation, or the collector the right to receive the tax. The necessity for this grows out of the fact that the tax was then levied on tobacco sold or removed for sale or consumption, and was payable only in money to the collector, whose authority for the collection was a sworn return of a sale, or removal for sale or consumption. The tax-paid product was thus not distinguished from that which had not paid the tax, and to permit the manufacturer to keep a mass of product partly tax-paid and partly not would enable frauds to be practiced by the claim that goods subsequently sold were from the tax-paid product. The construction and policy of the law then in force are very succinctly stated in Judge Blatchford's charge, which may be found in the report of the case in Lilenthal's Tobacco v. U. S., 97 U. S. 238, 257, 24 L. Ed. 901. Inasmuch as under that act the tax levied and collected was as of the date of a removal or sale for consumption, the rate fixed by the law in force on that date fixed the tax to be paid. A higher rate went into effect while Lilenthal owned the tobacco in question. To avoid the payment of this higher rate, he returned his product as sold or removed for sale just before the new law came into effect. The fact was, the sale was fictitious, and a mere fraudulent device to avoid the higher rate when he should sell. It being entirely lawful under the present law for a manufacturer to pay the tax upon his manufactured product at any time prior to a removal for sale or consumption, and for the collector to sell the stamps, whereby the tax may be paid in anticipation of any sale or removal, we see no reason for interpreting the second paragraph of section 3 of the act of 1898 as subjecting tobacco in the hands of manufacturers on which the tax had been lawfully paid before June 13, 1898, and after April 14, 1898, to double the rate of additional tax imposed upon tobacco in like situation in the hands of dealers. The plain intent of congress was to subject tobacco on which the taxes had been paid after April 14, 1898, and before June 13, 1898, only to an additional tax of one-half of the increase tax imposed upon non-tax-paid tobacco. This tobacco had been lawfully tax-paid. The intent of the manufacturer was plainly indicated by his purchase and cancellation of the proper stamps, and by his report of the tobacco so stamped as for sale or removal. These acts constituted a potential removal,—a "removal" within the spirit and justice of the law,—quite as fully as if some slight physical removal had been made over a line dividing the factory from the wareroom of the manufacturers. This interpretation of the law is quite as admissible as one which would be satisfied with an insignificant physical removal, and meets the equity and justice of this case by avoiding an absurd injustice which would otherwise result.

The judgment is accordingly affirmed.